Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD BELL,<br><br>     Plaintiff,<br><br>   vs.<br><br>CITRIX SYSTEMS, INC., BOB CALDERONI, ARLEN SHENKMAN, TONY GOMES, DONNA KIMMEL, TIM MINAHAN, MARK J. SCHMITZ, HECTOR LIMA, JOSEPH KIM, and MIKE ARENTH,<br><br>     Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(4) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Richard Bell ("Plaintiff"), by and through his attorneys, alleges upon information

and belief, except for those allegations that pertain to him, which are alleged upon personal

knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1. Plaintiff brings this stockholder action against Citrix Systems, Inc. ("Citrix" or the

"Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

and collectively with the Company, the "Defendants"), for breaches of fiduciary duty and for

violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange

Act") as a result of Defendants' efforts to sell the Company to Vista Equity Partners and Evergreen Coast Capital, through merger vehicles Picard Parent, Inc. ("Merger Sub 1"), Picard Merger Sub, Inc.("Merger Sub 2"), TIBCO Software,, Inc. (("Tibco") (and all collectively with Parent, "Parent") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a January 31, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent will acquire all the outstanding shares of Citrix common stock for $104.00 per share in cash. As a result, Citrix will become an indirect wholly-owned subsidiary of Vista and Evergreen.

3.      Thereafter, on March 3, 2022, Citrix filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to

sell Citrix without first taking steps to ensure that Plaintiff in him capacity as a public Company stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Citrix without regard for Plaintiff in his capacity as a public Company stockholder. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff in his capacity as a public Company stockholder.

6.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act and in further breach of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on March 3, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Citrix, provided by Citrix management to the Board and the Board's financial advisor Qatalyst Partners LP ("Qatalyst") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Qatalyst, if any,

and provide to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Citrix stockholder.

10.     Defendant Citrix is a biopharmaceutical company that discovers, develops, and delivers transformative therapies for unmet medical needs. Citrix is incorporated in Delaware and has its principal place of business at 851 West Cypress Creek Road Fort Lauderdale, Florida 33309.  Shares of Citrix common stock are traded on the Nasdaq Stock Exchange under the symbol "CTXS".

11.     Defendant Bob Calderoni ("Calderoni") has been a Director of the Company at all relevant times.  In addition, Calderoni serves as the Company's Chief Executive Officer ("CEO").

12.     Defendant Arlen Shenkman ("Shenkman") has been a director of the Company at all relevant times. In addition, Calderoni serves as the Company's Chief Financial Officer ("CFO").

13.     Defendant Tony Gomes ("Gomes") has been a director of the Company at all relevant times.

14.     Defendant Donna Kimmel ("Kimmel") has been a director of the Company at all relevant times.

15.     Defendant Hector Lima ("Lima") has been a director of the Company at all relevant times.

16.     Defendant Hector Lima ("Lima") has been a director of the Company at all

relevant times.

17.     Defendant Joseph Kim ("Kim") has been a director of the Company at all relevant times.

18.     Defendant Mike Arenth ("Arneth") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Parents are leading global investment firms.

21.     Non-Party Merger Subs are wholly owned subsidiaries of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the Nasdaq exchange which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

25.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Citrix and owe the public stockholders of the Company, including Plaintiff, the duties of due care, loyalty, and good faith.

26.     By virtue of their positions as directors and/or officers of Citrix, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Citrix to engage in the practices complained of herein.

27.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company public stockholders including Plaintiff.  To diligently comply with these duties, directors of a corporation must:

      a.   act with the requisite diligence and due care that is reasonable under the circumstances;

      b.   act in the best interest of the Company and its public stockholders, including Plaintiff;

      c.   use reasonable means to obtain material information relating to a given action or decision;

      d.   refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

      e.   avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of

others; and

f.    disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

28.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Citrix, are obligated to refrain from:

a.    participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders including Plaintiff; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders including Plaintiff.

29.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff as a public stockholder of Citrix, including their duties of loyalty, good faith, and due care.

30.    As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for his Citrix common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

31.    Citrix Systems, Inc., an enterprise software company, provides workspace, app delivery and security, and professional services worldwide. The company offers workspace

services, including Citrix Workspace; Citrix Virtual Apps and Desktops; Citrix Content Collaboration, a cloud-based file sharing and storage solution, which provides enterprise-class data services on various corporate and personal mobile devices for businesses; Citrix Endpoint Management for mobility and device management capabilities; Citrix Analytics for Security that assesses the behavior of Citrix Virtual Apps and Desktops, and Citrix Workspace users and applies actions to protect sensitive corporate information; Citrix Analytics for Performance that uses machine learning to quantify user experience; Citrix Secure Workspace Access, which provides an end-to-end solution to implement Zero Trust principles; and Citrix Secure Internet Access, which provides a solution that protects direct internet access for branch and remote workers using unsanctioned apps. It also provides networking products comprising Citrix ADC, an application delivery controller and load balancing solution for web, traditional and cloud-native applications; and Citrix SD-WAN, a WAN Edge solution that delivers flexible, automated, secure connectivity and performance for the workspace. In addition, the company offers customer services, hardware maintenance, consulting, and product training and certification services. The company serves healthcare, financial services, technology, manufacturing, consumer, and government agencies. It markets and licenses its products through resellers, distributors, systems integrators, independent software vendors, original equipment manufacturers, and service providers. The company was formerly known as Citrus Systems, Inc. and changed its name to Citrix Systems, Inc. in March 2009. Citrix Systems, Inc. was founded in 1989 and is headquartered in Fort Lauderdale, Florida.

32.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the November 4, 2021 press release announcing its 2022 Q2 financial results, the Company highlighted  revenue of $778 million for

Q3 2021 against $767 million in the same quarter last year, and that the company surpassed the consensus estimate of $772.8 million. It posted adjusted EPS of $1.20, beating the consensus estimate of $0.89.

33.     Speaking on the positive results, CEO Defendant Waksal said, "'I see a business with very strong assets and a solid foundation. Citrix, as you know, is the leader in its markets. We're #1 in the VDI DaaS market, and we're #2 in the ADC market. And those market positions are supported by strong technology advantages. The markets we participate in are healthy and growing, and our important VDI DaaS business has some strong secular tailwinds with trends supporting secure remote hybrid work."

34.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Citrix.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

35.     Despite this upward trajectory, the Individual Defendants have caused Citrix to enter into the Proposed Transaction without providing requisite information to Citrix stockholders such as Plaintiff.

***The Flawed Sales Process***

36.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

37.     Notably, while the Preliminary Proxy Statement indicates that a Transaction Committee of the Board was created to run the sales process, it fails to indicate what if this committee had the power to approve or veto potential strategic alternatives.

38.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Vista, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

39.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

40.     On January 31, 2022, Citrix and Parent issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **FORT LAUDERDALE, Fla.**--(BUSINESS WIRE)-- Citrix Systems, Inc. (NASDAQ: CTXS) ("Citrix"), today announced that it has entered into a definitive agreement under which affiliates of Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data and technology-enabled businesses, and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), will acquire Citrix in an all-cash transaction valued at $16.5 billion, including the assumption of Citrix debt.
>
> Under the terms of the agreement, Citrix shareholders will receive $104.00 in cash per share. The per share purchase price represents a premium of 30 percent over the Company's unaffected 5-day VWAP as of December 7, 2021, the last trading day before market speculation regarding a potential transaction, and a premium of 24 percent over the closing price on December 20, 2021, the last trading day prior to media reports regarding a potential bid from Vista and Evergreen.
>
> In connection with the transaction, Vista and Evergreen intend to combine Citrix and TIBCO Software ("TIBCO"), one of Vista's portfolio companies. TIBCO is a global leader in enterprise data management, empowering its customers to connect, unify, and confidently predict business outcomes. The combination brings together Citrix's secure digital workspace and application delivery suite with TIBCO's real-time intelligent data and analytics capabilities to empower customers and users with the secure application and information access and insights they need to accelerate digital transformation and navigate the hybrid workplace.

The union will create one of the world's largest software providers, serving 400,000 customers, including 98 percent of the Fortune 500, with 100 million users in 100 countries. Further, it will accelerate Citrix's defined growth strategy and SaaS transition. The combined company will be positioned to provide complete, secure and optimized infrastructure for enterprise application and desktop delivery and data management to advance hybrid cloud IT strategies and meet the needs of the modern enterprise.

"Over the past three decades, Citrix has established itself as the clear leader in secure hybrid work. Our market-leading platform provides secure and reliable access to all of the applications and information employees need to get work done, wherever it needs to get done. By combining with TIBCO, we will expand this platform and the outcomes our customers achieve," said Bob Calderoni, Chair of the Citrix Board of Directors and Interim Chief Executive Officer and President. "Together with TIBCO, we will be able to operate with greater scale and provide a larger customer base with a broader range of solutions to accelerate their digital transformations and enable them to deliver the future of hybrid work. As a private company, we will have increased financial and strategic flexibility to invest in high-growth opportunities, such as DaaS, and accelerate its ongoing cloud transition."

"Today's announcement is the culmination of a strategic review process conducted over five months, including extensive outreach to both potential financial and strategic buyers," continued Calderoni. "This transaction provides our shareholders with significant immediate cash value. Moreover, this investment by Vista and Evergreen is a testament to the value Citrix has created and the reputation our team has built."

Added Dan Streetman, CEO of TIBCO, "There has never been a better time to be in the business of connected intelligent analytics, and we're thrilled to bring our industry-leading solutions to Citrix's global customers. The workplace has changed forever, and companies everywhere will require real-time access to faster, smarter insights from the increasingly large volumes of data available to them, their employees, and their ecosystems. I couldn't be more excited about our combined vision and look forward to a strong partnership."

"We have always viewed Citrix as a true technology pioneer, building and defining so many categories that have changed the landscape of the industry," said Monti Saroya, Co-Head of Vista's Flagship Fund and Senior Managing Director. "As a private company, Citrix will have access to additional resources and support, as well as more flexibility to take advantage of strong secular tailwinds with trends supporting modern and secure remote hybrid work to serve the combined customer base and invest in high growth markets."

"Citrix and TIBCO provide mission-critical software and services to many the world's most successful businesses, and we see tremendous value in combining

their respective world-class offerings to help companies gather insight from the growing volumes of data generated by the hybrid work economy. Both businesses have now completed transitions to approximately 90% recurring revenue, poising the go-forward combined business to drive future growth," said John Stalder, Managing Director at Vista. "We look forward to partnering with Evergreen and the Citrix and TIBCO teams to ensure this is a seamless transition for all stakeholders."

"We have long appreciated the mission-critical role that Citrix plays in keeping workforces connected," said Managing Partner Jesse Cohn and Senior Portfolio Manager Jason Genrich on behalf of Evergreen and Elliott. "Having first invested in Citrix more than six years ago, we have a deep understanding of its unique strengths and significant potential as a private company. We look forward to partnering with Vista and working closely with Citrix's management team and its talented employees to expand its capabilities and help drive its next phase of growth."

### *The Inadequate Merger Consideration*

41.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

42.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.

43.     For example, the Company has traded as high as $144.47 within the past 52 weeks, a value that is approximately 40% greater than the value offered in the Proposed Transaction.

44.     Additionally, as recently as eight months ago, the financial analysts at the Jefferies Financial Group valued the Company's stock at $175.00 per share, a value that is approximately 68% greater than the value offered in the Proposed Transaction.

45.     Moreover, post-closure, Plaintiff will be frozen out of his ownership interest in the Company and will not be able to reap the rewards of the Company's future prospects.

46.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Vista at the expense of Citrix stockholders, including

specifically Plaintiff, which clearly indicates that Plaintiff in his capacity as a Citrix stockholder was not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

47.     The Merger Agreement contains certain provisions that unduly benefit Vista by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Citrix to pay up to $409 million to Vista, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Citrix must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

48.     The Merger Agreement also contains a "No Solicitation" provision that restricts Citrix from considering alternative acquisition proposals by, *inter alia*, constraining Citrix's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide acquisition proposal if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

49.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.   Here, the Individual Defendants agreed to provide Vista

information in order to match any other offer, thus providing Vista access to the unsolicited bidder's financial information and giving Vista the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Vista.

50.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests Plaintiff in its capacity as a public Company stockholder.

51.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

52.     The breakdown of the benefits of the deal indicate that Citrix insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Citrix.

53.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for.

| Name and Address of Beneficial Owner(1) | Shares Beneficially Owned (2)(3) | Percentage of Shares Beneficially Owned (4) |
|---|---|---|
| Five Percent Stockholders: | | |
|    T. Rowe Price Associates, Inc [5] | 17,104,797 | 13.6% |
|    The Vanguard Group[6] | 13,942,805 | 11.1% |
|    BlackRock, Inc. [7] | 12,897,450 | 10.3% |
| Named Executive Officers and Directors: | | * |

| | | |
|---|---|---|
| David J. Henshall[8] | 319,223 | * |
| Antonio G. Gomes[9] | 130,662 | * |
| Robert M. Calderoni[10] | 117,419 | * |
| Paul J. Hough[11] | 99,463 | * |
| Arlen R. Shenkman[12] | 25,599 | * |
| Woong Joseph Kim[13] | 19,234 | * |
| Murray J. Demo | 13,099 | * |
| Moira A. Kilcoyne | 6,671 | * |
| Thomas E. Hogan | 5,697 | * |
| J. Donald Sherman | 2,425 | * |
| Nanci E. Caldwell[14] | 2,189 | * |
| Peter J. Sacripanti[15] | 1,773 | * |
| Robert E. Knowling, Jr.[16] | — | * |
| All executive officers and directors as a group (19 persons)[17] | 998,387 | * |

54.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  These equity awards will be exchanged for cash payouts as follows:

**Cash Payments to Executive Officers and Non-Employee Directors in Respect of Citrix RSUs**

| Name | No. of Citrix RSUs | Consideration ($)(1) |
|---|---|---|
| **Executive Officers:** | | |
| Robert M. Calderoni | 105,966 | 11,020,464 |
| Michael Arenth | 62,770 | 6,528,080 |
| Antonio G. Gomes | 22,599 | 2,350,296 |
| David J. Henshall (2) | — | — |
| Paul J. Hough | 22,340 | 2,323,360 |
| Woong Joseph Kim | 77,302 | 8,039,408 |
| Donna N. Kimmel | 20,146 | 2,095,184 |
| Hector Lima | 29,387 | 3,056,248 |
| Timothy A. Minahan | 20,146 | 2,095,184 |
| Mark J. Schmitz | 38,284 | 3,981,536 |
| Arlen R. Shenkman | 42,130 | 4,381,520 |
| Jason Smith | 34,209 | 3,557,736 |
| **Non-Employee Directors:** | | |
| Nanci E. Caldwell | 2,144 | 222,976 |
| Murray J. Demo | 2,144 | 222,976 |
| Thomas E. Hogan | 2,144 | 222,976 |
| Moira A. Kilcoyne | 2,144 | 222,976 |
| Robert E. Knowling, Jr. | — | — |
| Peter J. Sacripanti | 2,144 | 222,976 |
| J. Donald Sherman | 2,144 | 222,976 |

**Cash Payments to Executive Officers in Respect of Citrix PRSUs**

| Name | No. of Citrix PRSUs(1) | Consideration ($)(2) |
|---|---|---|
| Robert M. Calderoni | — | — |
| Michael Arenth | — | |
| Antonio G. Gomes | 62,638 | 6,514,352 |
| David J. Henshall (3) | 86,324 | 8,977,696 |
| Paul J. Hough | 61,696 | 6,416,384 |
| Woong Joseph Kim | 31,513 | 3,277,352 |
| Donna N. Kimmel | 55,546 | 5,776,784 |
| Hector Lima | 37,078 | 3,856,112 |
| Timothy A. Minahan | 55,546 | 5,776,784 |
| Mark J. Schmitz | 74,403 | 7,737,912 |
| Arlen R. Shenkman | 74,853 | 7,784,712 |
| Jason Smith | — | — |

**Cash Payments to Executive Officers and Non-Employee Directors in Respect of Citrix DSUs (Vested and Unvested)**

| Name | No. of Citrix DSUs(1) | Consideration ($)(2) |
|---|---|---|
| **Executive Officers:** | | |
| Robert M. Calderoni | 17,685 | 1,839,240 |
| David J. Henshall(3) | 50,066 | 5,206,864 |
| **Non-Employee Directors:** | | |
| Nanci E. Caldwell | 32,496 | 3,379,584 |
| Murray J. Demo | — | — |
| Thomas E. Hogan | — | — |
| Moira A. Kilcoyne | — | — |
| Robert E. Knowling, Jr. | 3,502 | 364,208 |
| Peter J. Sacripanti | 12,278 | 1,276,912 |
| J. Donald Sherman | — | — |

55.     Moreover, certain employment agreements with certain Citrix executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Potential Payments to Named Executive Officers**

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(1) | Total ($) |
|---|---|---|---|---|
| Robert M. Calderoni | 7,314,041 | 12,859,704 | 74,277 | 20,248,022 |
| David J. Henshall | 8,750,000(3) | 8,977,696(4) | — | 17,727,696 |

| | | | |
|---|---|---|---|
| Arlen R. Shenkman | 1,800,000 | 12,166,232 | 82,514 | 14,048,746 |
| Antonio G. Gomes | 1,496,250 | 8,864,648 | 83,539 | 10,444,437 |
| Paul J. Hough | 1,496,250 | 8,739,744 | 83,539 | 10,319,533 |
| Woong Joseph Kim | 1,800,000 | 11,316,760 | 57,688 | 13,174,448 |

56.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57.     Thus, while the Proposed Transaction is not in the best interests of Citrix, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

58.     On March 3, 2022, the Citrix Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act and in breach of their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

59.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed

Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.  Whether the Transaction Committee had the power to veto or approve potential strategic alternatives;

b.  Whether the confidentiality agreements entered into by the Company with Vista differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Vista, would fall away; and

d.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Citrix's Financial Projections*

60.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Citrix provided by Citrix management to the Board and Qatalyst and relied upon by Qatalyst in its analyses.  The Preliminary Proxy Statement discloses management-

prepared financial projections for the Company which are materially misleading.

61.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, Qatalyst reviewed, "certain forward-looking information relating to Citrix prepared by management of Citrix, including the December Projections."

62.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Citrix management provided to the Board and Qatalyst. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

63.     With regard to the *September Projections* and *December Projections* prepared by Citrix Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

> a.  Non-GAAP Gross Profit, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the effects of stock-based compensation expense, amortization and impairment of acquired intangible assets and restructuring charges;
>
> b.  Non-GAAP Operating Income, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the effects of stock-based compensation expense, amortization and impairment of acquired intangible assets, acquisition-related costs and restructuring charges;
>
> c.  Non-GAAP Net Income,  including all underlying necessary metrics,

adjustments, and assumptions, including specifically: effects of stock-based compensation expense, amortization and impairment of acquired intangible assets, acquisition-related costs, charges and benefits related to tax reform, restructuring charges and the tax effects related to these items; and

d. EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: depreciation and amortization and other amortization items.

64.   With regard to the *Unlevered Free Cash Flows* prepared by Citrix Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Non-GAAP Operating Income, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the effects of stock-based compensation expense, amortization and impairment of acquired intangible assets, acquisition-related costs and restructuring charges;

b. The specific inputs and assumptions used to determine the assumed cash tax rates of 10% in 2022, 12% in each of 2023, 2024 and 2025, and 13% in 2026 as applied to the Metric of Net Operating Profit After Tax; and

c. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions.

65.   The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

66.   This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may

have been taken in bad faith, and cannot fairly assess the process.

67.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Qatalyst's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

68.     In the Preliminary Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion.   However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.   Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

69.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

  a. The specific inputs and assumptions used to determine the utilized range of discount rates of 8.0% to 9.5%;

  b. The weighted average cost of capital for Citrix utilized;

  c. The specific inputs and assumptions used to determine the utilized long-term cash tax rate of 13.0% for calendar year 2026;

  d. The specific inputs and assumptions used to determine the utilized range of multiples of fully diluted enterprise value to next-twelve-months estimated unlevered free cash flow of 12.0x to 17.0x;

    e.   The number of fully diluted shares of Citrix common stock outstanding as of January 26, 2022; and

    f.   The specific inputs and assumptions used to determine the utilized stimmed degree of dilution to current stockholders of 1.5%.

70.    With respect to the *Illustrative Discounted Cash Flow Analysis – Sensitivity Scenario*, the Preliminary Proxy fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized range of discount rates of 8.0% to 9.5%;

    b.   The weighted average cost of capital for Citrix utilized;

    c.   The specific inputs and assumptions used to determine the utilized long-term cash tax rate of 13.0% for calendar year 2026;

    d.   The specific inputs and assumptions used to determine the utilized range of multiples of fully diluted enterprise value to next-twelve-months estimated unlevered free cash flow of 12.0x to 17.0x;

    e.   The number of fully diluted shares of Citrix common stock outstanding as of January 26, 2022; and

    f.   The specific inputs and assumptions used to determine the utilized stimmed degree of dilution to current stockholders of 1.5%.

71.    With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized representative range of CY2022E EBITDA of 10.0x to 13.5x to each of Citrix's estimated calendar year 2022 EBITDA from the September and December

Projections; and

b. The specific inputs and assumptions used to determine the utilized representative range of CY2022E LFCF of 11.0x to 14.5x to each of Citrix's estimated calendar year 2022 levered free cash flow.

72.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The date on which each precedent transaction closed;

b. The value of each precedent transaction analyzed; and

c. The specific inputs and assumptions used to determine the utilized NTM Revenue Multiple representative range of 3.5x to 6.0x to Citrix's estimated revenue for the twelve-month period ending on September 30, 2022; and

d. The specific inputs and assumptions used to determine the utilized NTM EBITDA Multiple representative range of 10.0x to 18.0x to Citrix's adjusted EBITDA for the twelve-month period ending on September 30, 2022.

73.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

74.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Citrix stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Breach of Fiduciary Duties

### <u>(Against the Individual Defendants)</u>

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

77.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of him investment in Citrix.

78.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in him capacity as a Company public stockholder by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of the Company to Plaintiff in him capacity as a Company public stockholder.

79.     Indeed, Defendants have accepted an offer to sell Citrix at a price that fails to reflect the true value of the Company, thus depriving Plaintiff in him capacity as a Company public stockholder of the reasonable, fair and adequate value of him shares.

80.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in him capacity as a Company public stockholder all material information necessary for it to make an informed decision on whether to vote him shares in favor of the Proposed Transaction.

81.     The Individual Defendants dominate and control the business and corporate affairs of Citrix, and are in possession of private corporate information concerning Citrix's assets,

business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in him capacity as a Company public stockholder which makes it inherently unfair for them to benefit their own interests to the exclusion of Plaintiff.

82.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff in him capacity as a Company public stockholder.

83.     As a result of the actions of the Individual Defendants, Plaintiff in him capacity as a Company public stockholder will suffer irreparable injury in that he has not and will not receive its fair portion of the value of Citrix's assets and has been and will be prevented from obtaining a fair price for him holdings of Citrix common stock.

84.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff in him capacity as a Company public stockholder, all to the irreparable harm of the Plaintiff.

85.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendant Citrix)

86.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

87.     Defendants Citrix, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not

have occurred.

88.     As a result this conduct, Plaintiff in him capacity as a Company public stockholder will suffer irreparable injury in that he has not and will not receive him fair portion of the value of Citrix's assets and has been and will be prevented from obtaining a fair price for its holdings of Citrix common stock.

89.     Plaintiff has no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

90.     Plaintiff repeats all previous allegations as if set forth in full herein.

91.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

92.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

93.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy

statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

94.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

95.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

96.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

97.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

## Violations of Section 20(a) of the Exchange Act

### <u>(Against all Individual Defendants)</u>

98.      Plaintiff repeats all previous allegations as if set forth in full herein.

99.      The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

100.      The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

101.      The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Citrix's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

102.   The Individual Defendants acted as controlling persons of Citrix within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Citrix to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Citrix and all of its employees.  As alleged above, Citrix is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.   Enjoining the Proposed Transaction;

B.   In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.   Directing the Individual Defendants to comply with the Exchange Act and their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 7, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*